

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00152-CR

———————————————————

JAMES LYNN MAZY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 61,600-C

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

A jury convicted Appellant James Lynn Mazy of causing bodily injury to his elderly mother and stepfather.[1] *See* Tex. Penal Code Ann. § 22.04. In two issues, Mazy argues that the evidence was insufficient to show that he had acted intentionally or knowingly in injuring his mother and that the trial court abused its discretion by excluding his offered testimony that when he was a child, his stepfather had disciplined him with corporal punishment. Because sufficient evidence supports the jury's verdict and Mazy forfeited his complaint about the exclusion of evidence, we affirm.

## Background

At trial, Wichita Falls Police Officers Scott Stoecklein and Jesse Bartow testified that on March 9, 2019, they were dispatched on a family disturbance call to the house where Mazy lived with his mother and stepfather. Bartow spoke to Mazy, who had abrasions on his hand. Mazy said that when he had come home that day, his stepfather, 77-year-old Teddy Wescott, told him to leave and that he had pushed his stepfather to the ground. His mother, 78-year-old Barbara Wescott, tried to defuse the

---

[1]The indictment further included a habitual offender allegation asserting that Mazy had at least two prior, sequential felony convictions, and Mazy pled true to that allegation. *See id.* § 12.42(d). During Mazy's trial testimony, he admitted that he had been convicted of armed robbery in 1979, of aggravated robbery in 1981, of possession of a deadly weapon in a penal institution during his sentence for the aggravated robbery, of aggravated assault in 2012, and, at some point, of voluntary manslaughter.

situation, but he pushed her down as well. Bartow spoke to the Wescotts; Barbara's face was "very red," and she had some blood on her bottom lip and an abrasion on her left cheek. Teddy had a large laceration between his eyes.

The State played the officer's car video dashcam for the jury on which Mazy could be heard describing his version of events. Mazy told the officers that the events started when Mazy came home and Teddy smelled alcohol on Mazy's breath. Teddy pushed Mazy and told Mazy to get out of the house. Mazy pushed Teddy back, and Teddy fell down, "hit something," and "got all bloody." Mazy then stated that Barbara came in, that "she's crazy, too" and "started getting pissed with [him]," that she grabbed Mazy, and that he "pushed her back." They went into "the back bedroom, and that's all there was to it." The trial court also admitted photographs that one of the officers took of Mazy and of abrasions on his hand at the time of his arrest.

Teddy and Mazy both testified about the events. They both said that Mazy had not simply pushed Teddy to the ground but that Mazy hit Teddy in the head multiple times. They disagreed, however, about what had precipitated the assault. Teddy said it began when Barbara complained about her back hurting, and Mazy asked her if she had ever considered suicide. Teddy told Mazy not to say that to his mother and asked Mazy if he was high. According to Teddy, Mazy "exploded," "hollered at [him] real loud," and "started to bend [him] over the chair" by which Teddy was standing. Mazy began hitting Teddy on the head; Teddy stated that Mazy hit him ten times. While that was happening, Teddy saw Barbara fall. She landed face down "flat on the floor[,] and

3

she wasn't moving." Barbara has Alzheimer's, weighs 85 to 90 pounds, is four feet nine inches in height, and has severe scoliosis.

When Mazy stopped hitting him, Teddy reached for the phone to call 911. Mazy took the phone away. Teddy helped Barbara get up, and as he helped her to their bedroom, Mazy told him, "if this comes to trial, I'm gonna tell them you tried to shoot me." Mazy then went into the computer room and came back out with a gun, which he brandished but did not point at anyone. Barbara called the police on the phone in the bedroom. After the police came, the Wescotts were taken to the hospital.

Like his statements to the officers, Mazy testified that the altercation began because he had drunk alcohol—two cans of Mike's Hard Lemonade—before coming home that day. When he got home, Teddy "got up in [his] face" and said, "you're high on something." Mazy then said,

> When he got done saying I was high on something, high on something, he had a scowl on his face and he was all in my face and I was definitely in fear for my life and I was intimidated because the man's -- he's psycho when he wants to be. And when he did, I grabbed him by his t-shirt, in front of the neck of the t-shirt like this (indicating). And I grabbed him around the neck right there (indicating) and that's when I started slapping him back and forth with my right hand just like this right here (indicating), slapping him.

He stated that Barbara came running in and grabbed his hand to try to pull him away, and he pushed her away, hitting her in the mouth. She fell down but "got right up automatically. She wasn't even hurt or unconscious." When Teddy picked up the

4

phone, Mazy took the phone from him, and said, "[Y]ou're not calling the cops right now, Ted. I gotta have time to think about this." Ted and Barbara went into the bedroom and called the police.

During Mazy's testimony, before he testified about the events on the night in question, he sought to offer his testimony that when he was a child, Teddy often disciplined him by, among other acts, slapping him with his hand or spanking him with a belt. He also sought to introduce evidence that when he was a teenager, he had been in a serious car accident (in a stolen car) and broke his neck, from which he developed a fear of physical injury. He argued that "the child abuse shows that he has fear of Ted and Barbara and that would be a reason for him to strike out when they attack him" and that the car accident testimony showed "that after the accident he was mentally scared of getting hurt again and was slow to do anything that would physically harm him."

In 2019, Mazy was fifty-eight years old, and the State objected that the evidence was too remote to be relevant. The trial court announced that it would hold its ruling until after it had heard further testimony from Mazy about the assaults for which he was on trial. Mazy's attorney did not later reoffer the testimony or ask for a ruling on its admissibility.

The jury found Mazy guilty, found the enhancement allegations to be true, and assessed punishment at twenty-five years' confinement. The trial court sentenced him accordingly.

## Discussion

## I. Evidentiary sufficiency as to injury to Barbara

In Mazy's first issue, he argues that the State failed to prove that he acted intentionally or knowingly in injuring Barbara. He contends that even in the light most favorable to the verdict, no reasonable inference can be made from the evidence that his action in pushing his mother was more than reckless.

### A. Standard of review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). In reviewing the sufficiency of the evidence, we should look at events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Carter v.*

6

*State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021), *cert. denied*, 142 S. Ct. 859 (2022). We must scrutinize circumstantial evidence of intent as stringently as other types of evidence. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). When the record supports conflicting inferences, a reviewing court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Petetan v. State*, 622 S.W.3d 321, 337 (Tex. Crim. App. 2021).

## B. Analysis

Injury to an elderly individual is a result-oriented offense, and thus the culpable mental state must apply to the result of the defendant's conduct. *Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988). The State therefore had to prove that Mazy intended to cause Barbara injury or that he knew that his conduct was reasonably certain to cause her injury. *See* Tex. Pen. Code Ann. § 6.03.

We cannot read an accused's mind, and thus, absent a confession, a culpable mental state must be inferred from the circumstances. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). We may infer the accused's mental state from any facts that tend to prove its existence, including the accused's acts, words, and conduct. *Id.*; *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). We may rely on events that took place before, during, or after the offense. *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016). Circumstances that may be considered include the accused's inconsistent statements or implausible explanations to law enforcement and, in the

7

case of a violent offense, the method used to produce the injuries and the relative size and strength of the parties. *See Nisbett*, 552 S.W.3d at 267; *Ex Parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014) (orig. proceeding); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

The jury heard undisputed testimony that Barbara is elderly and frail; she has scoliosis, is under five feet tall, and weighs around 90 pounds. Yet, when she put her hands on Mazy to stop his attack on Teddy, rather than stopping or ignoring her, Mazy pushed her. By Mazy's own admission, he then stopped Teddy from calling the police because he wanted time to think about what he had "just [done] to [his] own family." When the police arrived, he told the officers a version of events that differed from what he and Teddy testified to at trial. For example, he told officers that he pushed Teddy after Teddy first pushed him, but at trial he made no mention of Teddy pushing him first, and both he and Teddy described his assault on Teddy as continuous hitting rather than a one-time push. Additionally, Teddy testified that before the offense began, Mazy asked his mother if she had ever considered killing herself. From this evidence, a rational jury could have found beyond a reasonable doubt that Mazy intended to injure Barbara or that he was reasonably certain that his act would cause her injury.

In his reply brief, Mazy argues—with no reference to authority—that a factfinder may infer intent from the size difference between the defendant and the complainant only when the defendant is clearly the aggressor and that because

Barbara physically intervened, he was not the first aggressor. However, even accepting Mazy's premise for purposes of addressing this argument, the only "aggression" from Barbara was her grabbing his hand to attempt to pull him away from Teddy to stop his assault. That act was not an attack on Mazy and does not negate the evidence that Barbara is a small, frail, elderly woman.

The evidence supports the jury's verdict. We therefore overrule Mazy's first issue.

## II. Exclusion of evidence

In his second issue, Mazy asserts that the trial court abused its discretion by excluding evidence of Teddy's prior violence toward him "when [he] was too young to defend himself." However, to complain on appeal about the trial court's ruling regarding the admission of evidence, the complaining party generally must show that the complaint was made to the trial court by a timely request, objection, or motion and that the trial court either (1) ruled on the request, objection, or motion or (2) refused to rule, and the complaining party objected to that refusal. Tex. R. App. P. 33.1; *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); *Iglesias v. State*, 564 S.W.3d 461, 467 (Tex. App.—El Paso 2018, no pet.). Here, the trial court did not make a ruling on the evidence's admissibility, and Mazy did not object to the trial court's failure to rule.

Before trial, the trial court had granted the State's motion in limine regarding Teddy's alleged childhood abuse of Mazy. During Mazy's testimony, his attorney

9

notified the trial court of his intent to offer testimony on that subject. The trial court excused the jury, and Mazy's attorney then elicited testimony from Mazy about "the physical and mental abuse that [Mazy had] told [him] . . . that Ted Wescott inflicted upon [Mazy]" when Mazy was a child and about the car accident in which Mazy had been injured as a teenager. When counsel finished his questioning, the State made a relevance objection, arguing that because of remoteness, "without some clear-cut relevance between what happened 40 years ago and what happened now, I don't believe that it should come in." The trial court stated that Mazy was not to tender questions regarding the alleged child abuse or his car accident at that time but that it would "hold off on ruling" until the court heard "further testimony from this witness concerning the occasion involving this alleged assault involving his parents. So [the court will] hold up on that."

Mazy then testified before the jury about the events on the night of the assault. After Mazy's testimony, the defense rested. Mazy did not re-offer his testimony about Teddy's alleged behavior to him in childhood and did not request a ruling on its admissibility. He did not object, either at the time he offered the testimony or at any time after that, to the trial court's failure to rule. Consequently, Mazy has forfeited his complaint. *See* Tex. R. App. P. 33.1; *Tucker*, 990 S.W.2d at 262; *see also Daniel v. State*, No. 02-18-00041-CR, 2019 WL 3334422, at *5 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op., not designated for publication) (stating error preservation requires

10

a trial court ruling or an objection to the trial court's refusal to rule). We overrule Mazy's second issue.

## Conclusion

Having overruled Mazy's two issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 6, 2022